## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| MELISSA MARENGO, | ) | **CIVIL ACTION NO.** |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADVENTHEALTH ORLANDO | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**
(Injunctive Relief Sought)

Plaintiff, Melissa Marengo, hereby files this Complaint and Demand for Jury Trial against Defendant, AdventHealth Orlando, and states as follows:

## **NATURE OF THE ACTION**

1. This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and the Americans With Disabilities Act, 42 U.S.C. 12101 *et seq.*, for unlawful employment practices based on sex, disability, and retaliation.

2. Plaintiff, Melissa Marengo alleges that defendant, AdventHealth Orlando, subjected Marengo to discrimination and a hostile work environment based on her sex/gender, and based on her disability including failure to reasonably accommodate, and retaliated against her for reporting and objecting to the discrimination and hostile work environment.

## **JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on federal statutes, pursuant to 28 U.S.C. § 1337 because the action is based on a

federal statute regulating commerce, and pursuant to 28 U.S.C. § 1343 because the action is based on deprivation of the Plaintiff's right under color of state law as against a federal law providing for equal rights.

4. The amount in controversy, exclusive of interest and costs and attorney's fees, exceeds $75,000.00.

5. Venue is proper in the Orlando Division of the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(b)(2) because Marengo resides in Seminole County, Florida and worked for Defendant in Seminole County, Florida.

## PARTIES

6. Plaintiff Marengo is a citizen of the United States and a resident of Seminole County, Florida.

7. Defendant AdventHealth Orlando is incorporated in the State of Florida and is registered to do business in the State of Florida, and at all times relevant thereto maintained a business location in Seminole County, Florida.

8. Defendant is an acute-care multi-specialty facility compromised of eleven (11) campuses in Orlando and its environs. AdventHealth Orlando has approximately 21,000 employees and is part of AdventHealth, a large, faith-based healthcare company headquartered in Altamonte Springs, Florida.

9. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

10. Plaintiff was hired by Defendant on or around December 11, 2000 and worked there for close to nineteen (19) years, until her unlawful termination by Defendant in September 23, 2019.

## ADMINISTRATIVE PROCEDURE

11. Plaintiff submitted a charge of discrimination, EEOC No. 511-2019-03735, against Defendant to the Equal Employment Opportunity Commission ("EEOC"), on or about October 10, 2019, alleging discrimination based on sex, disability, and retaliation.

12. The EEOC issued a Dismissal and Notice of Suit Rights on March 20, 2020, which Plaintiff received sometime thereafter.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

14. Plaintiff has exhausted her administrative remedies.

## STATEMENT OF CLAIMS

15. My employment terms and conditions changed on a daily basis that I never knew what to expect, lack of standardization in processes opened me up for constant harsh criticism because whatever I did, I counldn't do anything right.  I had no set expectation or written guide on how I was supposed to behave.  I behaved as I always had for the past 18 years as a critical care nurse- with agency, autonomy, direct speech, confident, competent, and taking lead and effecting change when necessary to promote good healthcare outcomes. I had to jump through unnecessary hoops and hurdles, and ask permission to speak to people outside of my department in order to try to accomplish doing my work.

16. 16.  I complained to HR that I did not feel safe, I was being harassed, discriminated against, I was being put through escalating acts of work sabotage to justify wrongdoing and poor work on my part.  Human Resources told me to document and turn in my claims, take FMLA because that is what it is there for.  All my hard work was for nothing because Human

Resources did not read my documentation, I was terminated, and their investigation found no instances of discrimination, harassment, retaliation, or of a hostile work environment.

17. My director called me on medical leave and told me he could not hold open my position any longer because "I can't keep paying a part-timer all these hours." The part-timer that was filling in for me slipped into my position, another equivalent position opened up on my team but it was filled immediately. Because my extension of medical leave was not job-protected, I was refused to transfer into an open equivalent position under a different director.

## CAUSES OF ACTION

## COUNT ONE

### (Discrimination/Hostile Work Environment – Sex/Gender)

18. This is an action for discrimination and hostile work environment based on sex/gender, for damages in excess of $75,000, injunctive relief, attorneys fees and costs, applicable interest, and such other and further relief as this Court deems appropriate.

19. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1 through __.

20. With regard to her sex/gender, Plaintiff was discriminated against and subjected to a hostile work environment, including but not limited to:

   a. Unwanted paternalism- steering women to lower-paying less desirable jobs- director stated he saw me teaching at UCF after chastising me and telling me that I need to stop thinking only of myself and support my team when I answered his question of where I saw myself in five years and I told him "I want to change Healthcare. I am going to Change Heallthcare:." networking, mentoring, sponsorship, individual development

    plans, assignments, performance appraisals that may provide the basis for subsequent opportunities.

    b.   Negative stereotyping when I behave in an agenic (dominant) manner ie. Dislay confidence, competence, achievement-orientation, inclination to take charge, autonomy and rationality.  Such behavior received discipline, disparate treatment, removal of responsibilities/work and /job assignments, harsh criticism, intentional acts to ignore my input, failure to listen / welcome issues, dismiss my legitimate concerns, cancel meetings at the last minute and avoidance, ignoring my repeated complaint of harassment, discrimination, and work sabotage.

    c.   Intentional misrepresentation of information or omission for me to do my job

    d.   Glass ceiling- promotion and advancement decisions based on opinion as opposed to qualifications and experience.

21. This harassment and hostile working environment was severe, based on the nature of the harassment, including demeaning statements and a continuing course of conduct by Defendant against Plaintiff, all of which were designed to and were likely to humiliate and demean Plaintiff, and which did have that effect on Plaintiff.

22. This harassment and hostile working environment was pervasive based on the many incidents of harassment alleged above, some of which were repeated on a frequent basis.

23. Plaintiff considered the conduct alleged herein towards her to be hostile and offensive.

24. The said conduct was objectively hostile and offensive.

25. The effect of the harassment and hostile working environment complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex in violation of law.

26. Defendant was on notice of said practices and hostile working environment because Defendant's managers, including Plaintiff's direct supervisors, participated in and witnessed said practices.

27. Defendant was on notice of said practices and hostile working environment because Plaintiff complained, orally and in writing, to Defendant's Human Resources representatives and various managers regarding said practices.

28. Defendant failed and refused to properly investigate and take prompt and effective action to stop the hostile working environment.

29. Plaintiff was subjected to tangible employment actions and materially adverse employment actions by Defendant, including termination.

30. By creating, condoning and perpetuating a hostile work environment because of Plaintiff's sex, Defendant has acted intentionally, maliciously, and/or recklessly.

31. As a direct and proximate result of the acts complained of herein, Plaintiff has suffered and will continue to suffer loss of compensation and benefits, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life and other pecuniary and non-pecuniary losses.

## COUNT TWO

### (Discrimination – Disability)

32. This is an action for discrimination based on disability, for damages in excess of $75,000, injunctive relief, attorneys fees and costs, applicable interest, and such other and further relief as this Court deems appropriate.

33. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1 through 32.

34. Plaintiff is a qualified individual with a disability under the ADA.

35. Plaintiff's disability: I possess two genetic, mental impairments that substantially limit the major life activities of eating, sleeping, learning, reading, concentration, communicating, and thinking. Without accommodation, my ability to effectively perform my job duties is impaired because I possess two hereditary neurobiological conditions that cause functional impairments to my daily living. One is episodic, highly treatable, and very responsive to interventions after approximately four to six weeks after treatment is initiated. The other condition is chronic, ever-present, but managed by simple adjustments to my environment that allows me to work in a manner that capitalizes and optimizes the function, concentration, and productivity of how my brain is specifically wired and specifically works.

20. With regard to her disability, Plaintiff was discriminated against and subjected to a hostile work environment, including but not limited to:

    a. Denial of promotion

    b. Denial of Job training

    c. Removal of responsibilities

    d. Exclusion from meetings and proceedings previously an integral part of

36. Requests for accommodation and the responses

    a. Request: Summer of 2018, I had not yet disclosed my disability, however, I asked to be moved to share a small office with two desks and a small table because the person occupying the other desk was quiet and I could think and have the ability to concentrate. Response: October of 2018. Moved to the new office. Despite there being two open cubicles in another section of the workplace, the director refused to relocate a third

    person occupying the office sitting at the tiny desk.  The accommodation was not effective because my tiny office became the hang out spot for the office staff.

b. Request: November 18, 2018, Email sent to Human Resources and my leaders requesting accommodation under the Americans with Disabilities Act.

    Response: February 6, 2019, Employee Relations contacts me for the first time via email to set up a phone appointment to discuss my request for Accommodation under the ADA. February 7, 2019 Employee Relations and I discussed my situation and reason for requesting accommodation.  This is the only day that I was extended the opportunity to participate in the Interactive Process despite subsequent requests for accommodation. Also, note that from the time of my initial request in November, close to three months passed before Employee Relations engaged in the Interactive Process.

c. Request: November 19, 2018: FMLA paperwork approved by Human Resources.

    Response: The job protected leave was not effective in that Human Resources asked me to document and procure for them supporting evidence of my claims of discrimination, harassment, retaliation, and hostile work environment. My entire 12 weeks of FMLA were used to compile and write the information that Human Resources had requested. Also, my director had the program coordinator email me twice asking me to complete work while out on FMLA leave.

d. Request: February 6, 2019, wrote an email to my director asking to move to a vacant office as a disability accommodation because my cubicle is noisy  and I could not think.

    Response: No.

e. Request: February 12, 2019, Requested to as an accommodation to work from home when I am not needed at the office in order to work in a quiet environment to be able to

think and concentrate. Submitted a request to reserve an unoccupied conference room so I could work in a quiet space and be able to concentrate. I adjusted my work hours (without accruing overtime) to stay later in the office to complete my work because it was mostly empty at the end of the workday so it was quiet and I could think and concentrate to complete my work.

Response: Work from home: No.

Response: Reserve an unoccupied conference room: No.

Response: Work later in the day: No.

Response: My director informed me that he had found me an alternate quiet place to work, however, it was not a permanent set-up and I could only take my laptop and whatever work I was working on at the time because my director wanted me to interact, work with, and help out my team.. Accommodation supplied (absent of the interactive process) was not effective in that I work on multiple projects each day that require different references, resources, and materials. Going back and forth between two different workspaces for supplies I forgot would consume a great deal of my cognitive and emotional energy which was already wearing thin due to being forced to work in a cookie cutter mold like everyone else that did not fit what I needed to in order to be able to work. I never saw the alternate workspace. My stress level was already high due to my noisy and busy work environment as well as the new unnecessary extra permissions I had now to obtain in order to communicate with another human being outside of my team as well as the added hoops and hurdles I was having to jump through to attempt to accomplish one task. My priority at the time was trying not to mess up. The alternate

work space was far down on my list of things that needed my attention. I didn't have the energy.

Request: June 27, 2019, Physician request for extension of medical leave of absence for an additional six weeks beyond the FMLA leave allotment of twelve weeks.  She wrote that I needed six weeks, but made a mistake in writing the incorrect month of July instead of August which would be 6 weeks. On July 1, 2019, the Leave of Absence department notified me that I had been granted an extension of medical leave until July 11, 2019 as recommended by my physician. The leave extension was categorized as NON-FMLA, therefore, there was no guarantee of re-instatement to work and/or my position.  On July 2, 2019, I wrote the Leave of absence department to request as an accommodation for my extension of medical leave to be covered under the Americans with Disabilities Act in order to maintain my employment with AdventHealth Orlando under job-protected leave. I included the web address link to the EEOC for their enforcement guidance on reasonable accommodation and undue hardship under the ADA.  I copied and pasted information directly from the website taken starting at the Leave heading, including question numbers 17, 18, and 19. On June 27, 2020 my physician noticed her mistake of writing the incorrect date on the return to work form and wrote me an email which I forwarded to the Leave of Absence department on July 9, 2019.  Though the initial request for leave extension was clearly communicated both in the body of the email I wrote as well as hand written by my physician in the blank after the words "please indicate the length of the extension:" 6 weeks is what she wrote and is the allotment of time that she recommended for my leave extension; not ten (10) days which was what the Leave of Absence department was guided to grant by my director as told to me by human

resources. Also, Human Resources categorized the leave starting July 12, 2020 and ending August 11, 2020 as an additional leave extension request beyond the first leave extension of ten (10) days that they had already granted. Once again, my communication and my physician's communication both clearly denote a time period of SIX weeks, not one and a half weeks i.e.10 days.

Response: I wrote to Human Resources as well as spoke to them on the telephone twice regarding my written and now verbal requests for leave accommodation under the ADA. I also forwarded the email I wrote to the Leave of Absence department with the EEOC information. All three times that I asked for ADA accommodation of leave, Human Resources responded only that my FMLA ran out and that the leave I was on is not job-protected leave. I asked her the decision-maker was that determined to involuntarily separate me from work without any regard, input, or say from me. Human Resources replied: "It's policy." Human Resources followed up with me shortly after the "it's policy" phone conversation with both her and Employee Relations present and on speakerphone to answer my questions. Once again when I asked about medical leave extension as an accommodation under the ADA both of them stated that my FMLA ran out so that my position is no longer job-protected. I reiterated that I understood that my FMLA leave expired, however, I am now, and have asked multiple times to consider this leave extension as a job-protected accommodation under the American's with Disabilities Act, not under FMLA. My physician requested an additional six weeks of medical leave due to the re-traumatization I suffered as a result of documenting my hostile work environment as Human Resources required of me in order to do an investigation that took me the entire 12 week duration of my job-protected FMLA leave to complete. After

persisting for an answer, Employee Relations stated that if six weeks from now, AFTER this extension granted under organizational policy ends, THEN at that time, if I require additional medical leave for my condition, THEN we can have a "discussion" about an accommodation under the ADA.

*Of Note*: The proffered motive to substantiate its uncompromising enforcement of terminating my nearly 19 year nursing career cultivated and practiced exclusively for AdventHealth Orlando by Human Resources was because "It's policy."

I was conceded an extension of non-protected job leave under section 2. - Non-FMLA Medical Leave found in AdventHealth Orlando's Leave of Absence Policy Policy #: 800.216.  To qualify, the employee must und For leave extension to meet criteria to qualify as a Reasonable Accommodation under the ADA, 1) If an employee exhausts their extended leave and needs additional time off in order to return to work, the employee may qualify for a reasonable extension of their leave under the ADA or other applicable laws. 2) To qualify, an employee must a) request the extension prior to exhaustion of their leave and b) Provide the Human Resources Department with a written statement from their treating healthcare provider confirming that i.) Employee has a physical or mental impairment that substantially limits a major life activity, and ii) The supplemental leave of a specified duration will allow the employee to return to work and perform the essential functions of their job in the near future. Lastly, the policy states AdventHeallth Orlando will evaluate timely requests submitted by employees on an individual basis and grant reasonable extensions of leave in compliance with the ADA and other applicable laws.

- On June 27, 2019, I requested an extension as recommended by my physician.

- On July 1, 2019, I was notified that I was granted Non-FMLA Leave Extension which is not job-protected leave.

- On July 2, 2019, I asked for my leave extension to be considered as an accommodation under the ADA.

- AdventHealth Orlando's Leave of Absence Policy #; 800.216 was became effective on July, 1, 2019 and was last reviewed on July 1, 2019.

- Interestingly, AdventHealth Orlando's Leave of Absence Standard Operating Procedure - SOP #: 800.216A became effective on October 30, 2013 and was last reviewed on March 3, 2019.

37. Defendant discriminated against Plaintiff in the terms and conditions of her employment, and terminated her employment, because of her disability and Defendant's failure to reasonably accommodate Plaintiff's disability.

38. As a direct and proximate result of the acts complained of herein, Plaintiff has and will continue to suffer loss of compensation and benefits, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life and other pecuniary and non-pecuniary losses.

## COUNT THREE

### (Retaliation)

39. This is an action for retaliation based on Plaintiff's protected activity of submitting discrimination complaints, for damages in excess of $75,000, injunctive relief, attorneys fees and costs, applicable interest, and such other and further relief as this Court deems appropriate.

40. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1 through 39.

41. By complaining to Defendant and Defendant's managers about the discriminatory practices and hostile working environment complained of above, Plaintiff engaged in conduct protected by Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991.

42. Following and because of Plaintiff's complaints, Plaintiff's employment was terminated.

43. Plaintiff's termination constitutes a tangible and adverse employment action.

44. The reason given by Defendant for Plaintiff's termination was not the true reason, but was a pretext for retaliation based on her protected activities.

45. Defendant's retaliatory motive against Plaintiff is shown by the actions and statements of its managers and workers toward Plaintiff in regard to her complaints, and the proximity in time between Plaintiff's complaints and her termination.

46. Defendant's termination of Plaintiff was retaliation for Plaintiff's complaints of discrimination and harassment based on her sex and disability.

47. But for her discrimination complaints, Plaintiff would not have been terminated.

48. By engaging in the foregoing conduct, Defendant has intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's federally protected rights to oppose practices that are prohibited by law.

49. As a direct and proximate result of the acts complained of herein, Plaintiff has suffered and will continue to suffer loss of compensation and benefits, mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life and other pecuniary and non-pecuniary losses.

**DEMAND FOR JURY TRIAL:**  Plaintiff demands a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A. Award Plaintiff compensation for past pecuniary and economic losses resulting from her termination, in an amount to be determined at trial;

B. Reinstate Plaintiff and enter declaratory relief enjoining Defendant from further discriminatory acts against Plaintiff, or Award Plaintiff compensation for future pecuniary and economic losses resulting from her termination, in an amount to be determined at trial;

C. Award Plaintiff compensation for non-pecuniary losses resulting from the unlawful practices described above, including but not limited to mental and emotional distress, humiliation, loss of reputation, loss of enjoyment of life, and other non-pecuniary losses, in an amount to be determined at trial;

D. Award Plaintiff punitive damages for Defendant's malicious and reckless conduct described above, in an amount to be determined at trial;

E. Award Plaintiff her litigation costs and expenses, including reasonable attorneys' fees, and appropriate pre-judgment and post-judgment interest; and

F. Grant such further relief as the Court deems necessary and proper.

Respectfully submitted,

Dated: June 18, 2020

_____

<u>Melissa Marengo</u>
<u>Address:</u> 2702 Amaya Terrace
Lake Mary, FL, 32746
<u>Email:</u> melissamarengo@hotmail.com
<u>Phone No.:</u>  (407)529-5855